Filed 1/10/25  P. v. Sanchez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B331843 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA095230) |
| v. | |
| VICTOR SANCHEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jacqueline Lewis, Judge.  Reversed with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

1

Attorney General, Noah P. Hill and Heidi Salerno, Deputy
Attorneys General, for Plaintiff and Respondent.

————————————————

In 2015, defendant and appellant Victor Sanchez pled
guilty to voluntary manslaughter (Pen. Code, § 192 subd. (a))[1]
and admitted he personally used a firearm in the commission of a
felony (§ 12022.5, subd. (a)).  A codefendant pled no contest to
voluntary manslaughter and admitted the allegation that a
principal was armed with a firearm in the commission of the
felony (§ 12022, subd. (a)(1)).  In 2022, Sanchez filed a petition for
resentencing under section 1172.6.  At the prima facie stage, the
trial court concluded Sanchez was ineligible for relief based on
evidence in the preliminary hearing transcript that Sanchez was
the actual killer, and the absence of a natural and probable
consequences instruction at an earlier trial that ended in a
mistrial.

On appeal, Sanchez contends the record of conviction does
not conclusively establish he was the actual killer, and the
charging document did not preclude the prosecution from
pursuing a theory of liability based on the natural and probable
consequences doctrine or the felony murder rule.  We agree that
the record of conviction does not demonstrate Sanchez's
ineligibility for relief as a matter of law.  We therefore reverse the
trial court order.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 31, 2011, Manuel Morales was shot and killed in
front of his home.  In 2012, the People charged Sanchez and a

---

[1]     All further undesignated statutory references are to the
Penal Code.

codefendant, Christian Velasquez, with Morales's murder in violation of section 187, subdivision (a). The information also alleged that Sanchez personally and intentionally discharged a firearm, which caused great bodily injury and death to Morales (§ 12022.53, subd. (d)); personally and intentionally discharged a firearm (§ 12022.53, subd. (c)); and personally used a firearm (§ 12022.53, subd. (b)). No firearm enhancements were alleged as to Velasquez. The trial ended in a mistrial.

The parties subsequently reached a plea agreement. In February 2015, Sanchez pled guilty to an amended count of voluntary manslaughter. He also admitted personal use of a firearm in the commission of a felony (§ 12022.5, subd. (a)). Velasquez pled no contest to an amended count of voluntary manslaughter and admitted the allegation that a principal was armed with a firearm in the commission of a felony (§ 12022, subd. (a)(1)). Sanchez's counsel stipulated to a factual basis for the plea and admissions based on the preliminary hearing transcript and the trial transcript.[2] The trial court sentenced Sanchez to 14 years in prison.

In April 2022, Sanchez filed a form petition for resentencing under section 1172.6. The trial court appointed counsel. The People filed an opposition, to which they attached the preliminary hearing transcript and the reporter's transcript from Sanchez's guilty plea. Sanchez did not file a reply.

---

[2] Sanchez executed a written advisement of rights, waiver, and plea form, indicating he stipulated and agreed there was a factual basis for his plea and admissions, and that he was pleading guilty to take advantage of a plea bargain, pursuant to *People v. West* (1970) 3 Cal.3d 595.

In June 2023, the trial court denied Sanchez's petition after determining he failed to establish a prima facie case for relief. The trial court reasoned that the preliminary hearing transcript established Sanchez was the actual shooter, and the jury was not instructed on a natural and probable consequences theory at the first trial. The court concluded it therefore appeared that the People had not relied on that theory.[3]

Sanchez timely appealed from the denial of his petition.

## DISCUSSION

### I. Senate Bill No. 1437 and Section 1172.6

In 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see also *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) The bill amended section 188 by adding the requirement that, except as stated in section 189, subdivision (e), "in order to be convicted of murder, a principal in a crime shall

---

[3] It is unclear from the record whether the trial court reviewed the transcript or other portions of the record from the previous trial. The parties did not present the trial court with any materials from the trial and the court did not expressly state that it had reviewed the trial transcript or any other portion of the record from the earlier trial. Aside from the original information, the record on appeal does not include any documents related to the proceedings that ended in a mistrial.

4

act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)  The amendments to the Penal Code did not invalidate murder convictions based on the theory that the defendant was the actual killer.  (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Mares* (2024) 99 Cal.App.5th 1158, 1166, review granted May 1, 2024, S284232 (*Mares*); *People v. Garcia* (2022) 82 Cal.App.5th 956, 967 [Sen. Bill No. 1437 imposed heightened mens rea requirement only for persons who were not actual killers].)

Senate Bill No. 1437 created a procedure, now codified at section 1172.6, in which persons convicted of qualifying offenses under the former law may seek resentencing if they could no longer be convicted of those offenses under amended section 188. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847.)  A defendant must file a petition declaring that, among other things, the defendant could not presently be convicted of murder under the current law.  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  If the petitioner makes a prima facie showing of entitlement to relief, the court must issue an order to show cause. "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

## II.    Prima Facie Stage and Standard of Review

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

"While the trial court may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) Courts may not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id.* at p. 972.) Rather, "[t]he record should be consulted at the prima facie stage only to determine 'readily ascertainable facts,' such as the crime of conviction and findings on enhancements." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815.) The court may make credibility determinations adverse to a petitioner only if the record of conviction " ' "contain[s] facts refuting the allegations made in the petition" . . . .' " (*Lewis*, at p. 971.)

The trial court's denial of a resentencing petition at the prima facie stage " 'is a purely legal conclusion,' " which appellate courts review de novo. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101 (*Ervin*); *People v. Patton* (2023) 89 Cal.App.5th 649, 656, review granted June 28, 2023, S279670 (*Patton*).)

## III. The Record Does Not Conclusively Establish Sanchez is Ineligible for Relief as a Matter of Law

Sanchez contends the trial court erred in finding him ineligible for relief because the record of conviction does not establish the identity of the actual killer and nothing in the charging document precluded the prosecution from pursuing a now-invalid theory of murder. The People assert the charges and the plea were sufficient to demonstrate Sanchez is ineligible for relief.

The record in this case was very limited. Although Sanchez's opening brief addresses at great length the current split in authority as to the proper use of evidence admitted at a

6

preliminary hearing in evaluating a section 1172.6 petition, the People concede the trial court erred in considering preliminary hearing testimony in this case to find Sanchez ineligible for relief. We agree with this concession.  At the preliminary hearing, a detective testified pursuant to Proposition 115, codified as section 872, subdivision (b), relaying non-party witness statements identifying Sanchez as the sole shooter and actual killer.[4]  But section 1172.6, subdivision (d)(3), explicitly precludes the use of hearsay evidence admitted in a preliminary hearing pursuant to section 872, subdivision (b), at a section 1172.6 evidentiary hearing, and we agree with the courts that have concluded this prohibition must also extend to the prima facie stage.  (*Patton*, *supra*, 89 Cal.App.5th at p. 652, fn. 2, review granted; *People v. Flores* (2022) 76 Cal.App.5th 974, 988, fn. 9 (*Flores*).)

When the testimony admitted pursuant to section 872, subdivision (b) is excluded, the remainder of the preliminary hearing evidence failed to establish Sanchez was convicted on a theory that remains valid.  A detective testified that based on video footage from the victim's home surveillance system, multiple shots were fired from a car pulling away from the front

---

[4]     The detective testified that an associate of the defendants, Adalberto Castillo, admitted he was in the car with Sanchez and Velasquez when Morales was shot.  Although Adalberto could not see who was shooting, he believed the shots were fired from within the car, and he could see Velasquez, who was not shooting. Adalberto's brother, Jesus Castillo, told the detective he was not present for the shooting, but he said Sanchez told him after the shooting that "he [Sanchez] had gotten" Morales.  Jesus also told the detective that Velasquez said Sanchez shot and killed Morales in the belief that Morales may have had a gun.

of the victim's house.  Because it was dark, the video footage did not reveal the number or identity of individuals in the car.  The shots came from the passenger side of the vehicle.  The murder weapon was not recovered.  There were multiple nine-millimeter shell casings found on the street and sidewalk in front of Morales's residence.  Although law enforcement found a gun in Sanchez's possession during the investigation, it was inconsistent with the type of gun that could have fired nine-millimeter bullets.  The vehicle's license plate number and exact color were not visible in the video, and the detective could not identify the type of car from the video.  Another detective reviewed the video footage and identified the vehicle as a 1998 Toyota Camry, and the vehicle in the video looked similar to a 1998 Toyota Camry that belonged to Velasquez.  This evidence did not establish that the People only pursued a theory that Sanchez was the actual killer or a direct perpetrator rather than an accomplice.

Similarly, the People do not argue that the trial court could permissibly rely on the transcript or other portions of the record from the earlier trial.  We agree with Sanchez that following the mistrial, the People were not bound to pursue the same theories, rely on the same evidence, request the same jury instructions, or make the same arguments asserted in the prior trial.

Thus, all that remains are the charging documents and Sanchez's and Velasquez's pleas.  The People assert this limited record was sufficient to establish that Sanchez was convicted as "the direct perpetrator" or the "actual perpetrator."  We disagree. The original information charged Sanchez with murder.  Because murder was generically charged and the information "did not specify or exclude any particular theory of murder," the charge alone does not indicate Sanchez was ineligible for resentencing as

a matter of law. (*Flores*, *supra*, 76 Cal.App.5th at p. 987; see also *People v. Estrada* (2024) 101 Cal.App.5th 328, 337–338 (*Estrada*); *People v. Rivera* (2021) 62 Cal.App.5th 217, 233 (*Rivera*).) The charge was broad enough to encompass theories that Sanchez was guilty as an aider and abettor under a natural and probable consequences or felony murder theory.

Sanchez's guilty plea also does not preclude relief as a matter of law. In entering his plea, Sanchez did "not admit to or stipulate to any particular theory of murder." (*Flores*, *supra*, 76 Cal.App.5th at p. 987.) He simply pled guilty to voluntary manslaughter. (See *People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1212–1213 (*Gaillard*) [petitioner admitted guilt but record did not establish specific theory; admission was to an aiding and abetting voluntary manslaughter in generic terms; the admission to voluntary manslaughter "would not refute his allegation that he could not presently be convicted of *murder* on a direct aiding and abetting theory"].)

Sanchez's stipulation that the preliminary hearing and trial transcripts provided a factual basis for his guilty plea also does not conclusively preclude relief in this case. "Courts have consistently differentiated between an admission that a document or recitation contains a factual basis for a plea and an admission that statements in that document or recitation are true." (*People v. Hiller* (2023) 91 Cal.App.5th 335, 349.) "A defendant is not required to personally admit the truth of the factual basis of the plea, which may be established by defense counsel's stipulation to a particular document, such as a police report or a preliminary hearing transcript." (*People v. French* (2008) 43 Cal.4th 36, 50–51.) "Thus, absent an indication that a defendant admitted the truth of particular facts, the stipulation

to a factual basis for the plea does not 'constitute[ ] a binding admission for all purposes.' " (*Rivera*, *supra*, 62 Cal.App.5th at p. 235, quoting *French*, at p. 52.)  Here, Sanchez did not admit the truth of any particular facts as part of the stipulation that a factual basis for his plea to voluntary manslaughter existed. Further, as explained above, without considering the evidence at the preliminary hearing admitted pursuant to section 872, subdivision (b), the remaining evidence did not indicate the People were pursuing a theory that remains valid under existing law.

Sanchez's admission that he personally used a firearm under section 12022.5, subdivision (a), also does not conclusively establish that he was convicted as the actual killer or that he was convicted as an aider and abettor who acted with malice.[5] (*People v. Davenport* (2021) 71 Cal.App.5th 476, 485 [plea to firearm enhancement under § 12022.5, subd. (a), does not bar relief as a matter of law at prima facie stage].)  As the California Supreme Court has explained in a different context in *People v. Jones* (2003) 30 Cal.4th 1084 (*Jones*), when there are multiple participants in a crime, a true finding on a section 12022.5 personal use enhancement as to one participant does not necessarily establish the participant was the actual killer.  As the court noted, if, for example, two participants in a felony "display guns" for intimidation, and one "shoots and kills a victim, both

---

[5]      Section 12022.5, subdivision (a), provides: "Except as provided in subdivision (b), any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense."

10

[participants] could be found to have personally used a gun in . . . the felony murder, even though only one is the actual killer." (*Jones*, at p. 1120; see *Estrada*, *supra*, 101 Cal.App.5th at p. 338 [admission of enhancements for the personal use of a deadly weapon and infliction of great bodily injury did not establish defendant acted with the intent to kill or refute that he was convicted on a theory of imputed malice]; *People v. Berry* (1993) 17 Cal.App.4th 332, 335 [in § 12022.5, subd. (a), "use encompasses a situation where the defendant is armed and uses his firearm in furtherance of a series of related offenses that culminates in a fatal or near fatal shooting even though the defendant does not personally fire the actual shot"].)

Further, as indicated in *Jones*, personal use encompasses conduct such as displaying or brandishing a firearm, in addition to firing a weapon. (See e.g., *People v. Bryant* (2011) 191 Cal.App.4th 1457, 1472; *People v. Arzate* (2003) 114 Cal.App.4th 390, 399–400.) Thus, an admission or true finding of personal firearm use when there are multiple armed participants leaves open the possibility that the defendant "used" the gun to aid and abet a target crime short of murder, while a different participant intended to, and did, shoot to kill. Here, in the portions of the record properly considered, there was no evidence conclusively establishing the People's theory of conviction was that, of the two defendants, or of the three individuals in the car, only Sanchez had or used a gun.

This case is therefore unlike *Patton*, in which this court concluded that the defendant, who as part of his plea admitted that he personally used and discharged a firearm in the course of an attempted murder, was ineligible for resentencing because the evidence indicated he was the "sole perpetrator." (*Patton*, *supra*,

11

89 Cal.App.5th at pp. 649, 656–657, review granted; cf. *People v. Garrison* (2021) 73 Cal.App.5th 735, 743–744 [in a robbery involving two perpetrators, where evidence showed only one displayed and used gun, true finding on personal use enhancement established the individual identified with the sole weapon as the actual killer and ineligible for resentencing].)

The People also argue the record of conviction establishes Sanchez was the direct perpetrator because, while he admitted the personal use allegation, Velasquez only admitted the allegation that a principal was armed with a firearm under section 12022, subdivision (a)(1). The People assert that when viewed together, these pleas establish Sanchez was convicted as the direct perpetrator, and they together eliminate the possibility that he could have been convicted of murder under an imputed malice theory.

This contention presents a closer case. When viewed together, the amended charges and the two pleas strongly suggest that the basis on which the People pursued the charge against Sanchez was that he was the actual killer, and Velasquez was an accomplice. After all, if the theory was that Velasquez fired a weapon instead of, or in addition to, Sanchez, one would expect the People also would have charged Velasquez with a personal use firearm enhancement.

However, at the prima facie stage, we cannot engage in any factfinding involving the weighing of the evidence, and the " 'prima facie bar was intentionally and correctly set very low.' " (*Lewis, supra,* 11 Cal.5th at p. 972.) It is appropriate to deny a petition at the prima facie stage only if the record conclusively establishes that the petitioner is ineligible for relief as a matter

12

of law.  (*Id*. at p. 971; *Gaillard, supra*, 99 Cal.App.5th at p. 1211; *Ervin, supra*, 72 Cal.App.5th at p. 101.)

Velasquez's admission that a principal was armed with a firearm in the commission of a felony under section 12022, subdivision (a)(1), does not conclusively establish that the People's sole theory was that only Sanchez was armed or used a gun.  Section 12022, subdivision (a)(1), provides that "[t]his additional term [of imprisonment] shall apply to a person who is a principal in the commission of a felony or attempted felony if *one or more* of the principals is armed with a firearm, *whether or not the person is personally armed with a firearm*."  (Italics added.)  This provision therefore allows for multiple principals with firearms, including the person making the admission.  (*Ibid*.; *People v. Paul* (1998) 18 Cal.4th 698, 707 [§ 12022, subd. (a)(1), provides that a defendant is armed "if a principal is armed in the commission of the offense, whether or not the defendant personally is armed"].)  Stated differently, section 12022, subdivision (a)(1) allows for *both* personal and vicarious liability.  (*People v. Superior Court (Pomilia)* (1991) 235 Cal.App.3d 1464, 1469.)

In *People v. Bland* (1995) 10 Cal.4th 991, the California Supreme Court, in interpreting several subsections of section 12022, observed that by "making the liability for increased punishment extend to any principal *whether or not* 'personally armed,' subdivision (a)(2) of section 12022 imposes both personal and vicarious liability."  (*Id*. at p. 998, fn. 3, italics added.)  Thus, the principal armed allegation does not categorically *exclude* liability for an individual who is personally armed or personally uses a firearm.

On the record before us, the People's theory could have been that all occupants of the car were armed, Sanchez brandished a firearm, and he aided and abetted Velasquez or another person in the car in perpetrating an assault or other crime short of murder, without personally harboring an intent to kill. While the Sanchez and Velasquez pleas considered together suggest the People's theory was that Sanchez was the direct perpetrator and only shooter, we cannot determine that the pleas *conclusively establish* that was the theory of conviction.

The People assert that only one person had a firearm and fired shots at the victim. However, they do not cite any such evidence in the record of conviction. Instead, they assert the only "logical conclusion" from the "pre-plea proceedings, plea, and section 1172.6 proceedings" was that Sanchez shot Morales with an intent to kill. While *a* logical conclusion, we disagree that it is the *only* permissible theory that can be deduced from the admissible portions of the record of conviction.

This case is therefore unlike those in which the record of conviction contains facts refuting the petition's allegations. Sanchez was not the only person involved in the shooting that killed the victim. (Cf. *Patton*, *supra*, 89 Cal.App.5th at pp. 649, 656–657, review granted; *People v. Pickett* (2023) 93 Cal.App.5th 982, 986, review granted Oct. 11, 2023, S281643.) The portions of the preliminary hearing testimony that could be considered did not conclusively identify the murder theory the People were pursuing. (Cf. *Mares*, *supra*, 99 Cal.App.5th at p. 1167, review granted [preliminary hearing transcript showed People offered only an actual killer theory]; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166 [only theory put forth by the prosecutor at the preliminary hearing, and otherwise, showed

14

defendant convicted of murder as direct aider and abettor].)  We cannot determine, as a matter of law, that Sanchez is ineligible for relief.  (See *Mares*, at p. 1173 ["If a defendant who faced a murder charge before Senate Bill 1437 pled guilty and the record contains any indication he had an accomplice who may have been the killer, a prima facie case ordinarily would be readily established, even by conclusory assertions in a form petition."].)

## DISPOSITION

The order denying Sanchez's petition for resentencing is reversed with the direction to the trial court to issue an order to show cause and hold an evidentiary hearing consistent with Penal Code section 1172.6.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, J.


I concur:


BERSHON, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16

**Egerton, Acting P.J., Concurring.**

I concur in the result.

EGERTON, Acting P.J.